LAW OFFICE OF ADRIENNE D. EDWARD, P.C.
549 Summit Avenue
Jersey City, New Jersey 07306
(201) 420-8850
Attorney for Defendant, **Darryl Dancy**

_____

**UNITED STATES OF AMERICA**

      **Plaintiff,**

      **-VS-**

**DARRYL DANCY**

       **Defendant.**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**DOCKET NO.:19-658**

**CRIMINAL ACTION**

_____

# MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND REQUEST A FRANKS HEARING

_____

## PROCEDURAL HISTORY & STATEMENT OF FACTS

On September 17, 2019 the matter of Darryl Dancy (*herein* "Mr. Dancy") was presented to the Grand Jury for the United States District Court, District of New Jersey. An indictment was returned and held Mr. Dancy in violation of Title 18 of the United States Code (U.S.C.), Section 922(g)(1) for having previously been convicted of a crime punishable by a year and knowingly possessing: (a) a .223 caliber semiautomatic pistol; (b) a .45 caliber semiautomatic handgun; (c) a .40 caliber semiautomatic handgun; (d) a .38 caliber revolver; (e) a .22 caliber revolver; (f) a 9-millimeter semiautomatic handgun; (g) a .40 caliber semiautomatic rifle; (h) a .223 caliber semiautomatic rifle; and (i) a 12-gauge pump-action shotgun. [1]

The U.S. Government alleges that on June 18, 2018, Detective John DeGroot of the Essex County Prosecutor's Office Narcotics Task Force (ECPO - NTF) presented an Affidavit and Search Warrant before the Honorable Mark Ali, J.S.C. The Affidavit and Search Warrant application was for a residence located at 640 Chancellor Avenue, Irvington, New Jersey. The Search Warrant was reviewed and issued by Judge Ali at approximately 6:02 p.m. [2] The invalid Search Warrant, lacking probable cause, was based on allegations from an unreliable informant and insufficient corroboration of independent police investigation. As a result of the invalid No Knock Search Warrant being authorized, Mr. Dancy's residence located at 640 Chancellor Avenue, Irvington,

---

[1] Attached as Exhibit "A" is a copy of the Indictment.
[2] Attached as Exhibit "B" is a copy of the Search Warrant and Affidavit (CRO #460-06-18).

New Jersey was unlawfully entered and searched by the police on June 19, 2018 at approximately 5:55 a.m. (The execution was conducted by the ECPO - NTF, ECPO – Crime Scene Unit, ECPO - Tactical Response Team, and ECPO -Professional Standards Bureau).

Mr. Dancy was not located inside of his residence at the time the Search Warrant was executed. The U.S. Government has alleged that on June 19, 2018 at approximately 11:20 a.m., Detectives Whitaker, Glover, and Johnson located and observed Mr. Dancy sitting in a vehicle which was parked in the area of 680 Chancellor Avenue, Irvington, New Jersey. The Detectives proceeded to conduct a motor vehicle stop of Mr. Dancy "based on the items earlier recovered from his residence."[3] Mr. Dancy was removed from the vehicle and unlawfully arrested. The vehicle was towed pending application for a search warrant.

It is further alleged that on June 19, 2018, Detective DeGroot once again presented an Affidavit and Search Warrant before the Honorable Mark Ali, J.S.C. for a residence located at 790 Holly Place, 1st Floor, Rahway, New Jersey and for a 2015 black Chevrolet Silverado—registered to Mr. Dancy. Judge Ali reviewed and issued the Search Warrant at approximately 6:04 p.m.[4] The Search Warrant of the residence located at 790 Holly Place, 1st floor, Rahway, New Jersey was executed that same day. On June 20, 2018 at approximately 3:00p.m., Detectives executed a search of Mr.

---

[3] Attached as Exhibit "C" is a copy of the ECPO Supplemental Reports (dated 6/26/2018) & (7/3/2018).
[4] Attached as Exhibit "D" is a copy of the Search Warrant and Affidavit (CRO #463-06-18 A & B).

Dancy's vehicle. Ultimately, the execution of both Search Warrants (CRO 460-06-18 and
CRO 463-06-18 A & B) and the evidence subsequently retrieved from both residences
and the vehicle, resulted in the above referenced charges against Mr. Dancy. [5]

Based on the aforementioned facts and the ensuing legal grounds, the Defense
files this motion to suppress the evidence seized because (1) an invalid Search Warrant
was wrongfully authorized for Mr. Dancy's residence; and (2) an unlawful stop of Mr.
Dancy's vehicle was conducted and an invalid Search Warrant for his vehicle was
subsequently issued. An evidentiary Franks Hearing is requested in support of
Defense's motion as Mr. Dancy's constitutional rights were clearly violated because no
probable cause existed to support the issuance of the Search Warrants. Thus, executing
the searches were unreasonable and unlawful. Moreover, the Warrant Affidavits were
supported by allegations displaying a reckless disregard for the truth through
information provided by an unreliable informant and a lack of corroboration provided
by independent police investigation. As a result of this unlawful police action, all
evidence seized in connection with the Search Warrants must be suppressed.

---

[5] Attached as Exhibit "E" is a copy of the Return of Search Warrant for [CRO 460-06-18] and [CRO:463-06-
18 A & B)].

# LEGAL ARGUMENT

## POINT I

## EVIDENCE SEIZED PURSUANT TO AN INVALID SEARCH WARRANT MUST BE SUPPRESSED WHEN NO PROBABLE CAUSE WAS ESTABLISHED IN SUPPORT OF THE WARRANT.

### SUB-POINT I (A)

### NO PROBABLE CAUSE:

Prior to a warrant being issued to search a person's home, a neutral, magistrate judge "must be satisfied that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched…Stated differently, search warrants must be based on sufficient specific information to enable a prudent, neutral judicial officer to make an independent determination that there is probable cause to believe that a search would yield evidence of past or present criminal activity."[6] The issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for … conclud[ing]' that probable cause existed. "[7]

---

[6] State v. Keyes, 184 N.J. 541, 553 (2005); citing *State v. Novembrino*, 105 *N.J.* 95, 120, 124 (1987).
[7] Illinois v. Gates, 462 U.S. 213, 238–39 (1983); citing *Jones v. United States*, *supra*, 362 U.S., at 271 (1960).

5

The Supreme Court in United States v. Ventresca, 380 U.S. 102, 105–06 (1965), emphasized how heavily the ultimate decision of a magistrate weighs over the issuance of a search warrant by thoroughly explaining, "an evaluation of the constitutionality of a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue warrants…are to be preferred over the hurried action of officers…who may happen to make arrests.' The reasons for this rule go to the foundations of the Fourth Amendment." [8] A search warrant must only be issued upon a finding of probable cause based on the underlying facts or circumstances included "which would warrant a prudent man in believing that the law was being violated." [9] Probable cause exists when one is led to believe that "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[10]

The U.S. Supreme Court established a "totality of the circumstances test" to determine whether a search warrant was properly issued based on a finding of probable cause. Under this test, "courts must consider [the totality of the circumstances or] all relevant circumstances to determine the validity of a warrant." [11]  The court in State v. Novembrino, 105 N.J. 95, 107 (1987) emphasized how the issuance of warrants without probable cause could not be tolerated in New Jersey:

---

[8] Citing: Aguilar v. State of Texas, 378 U.S. 108 (1964); United States v. Lefkowitz, 285 U.S. 452, 464 (1932).
[9] State v. Novembrino, 105 N.J. 95, 107 (1987).
[10] United States v. Gibson, 928 F.2d 250, 253 (8th Cir. 1991); citing Illinois v. Gates, 462 U.S. at 238 (1983).
[11] State v. Keyes, 184 N.J. 541, 554 (2005); citing Illinois v. Gates, 462 U.S. at 238 (1983); State v. Smith, 155 N.J. 83, 92 (1998).

"the requirement for [a] search warrant is not a mere formality but is a great constitutional principle embraced by free men and expressed in substantially identical language in both our federal and state constitutions…that the right of the people to be secure against unreasonable searches and seizures shall not be violated and that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" [12]

This reviewing Court should find that there was no "substantial basis" for concluding that probable cause existed to issue the No Knock Search Warrant on Mr. Dancy's residence. Based on the underlying facts and circumstances alleged in the Affidavit, there could not have been a finding of probable cause. The affiant, Detective DeGroot, alleged to have probable cause to believe that the possession and distribution of a controlled dangerous substance was occurring at Mr. Dancy's residence based on the unreliable and uncorroborated allegations of a confidential informant. Detective DeGroot has never worked with this confidential informant nor have any alleged facts been conveyed that other members of the ECPO – NTF have worked with this confidential informant. Rather, DeGroot proceeded to conclude that the confidential informant is reliable based on alleged second-hand information from an unrelated third party, DEA Special Agent (S.A.) Eric Tyler.

The confidential informant, addressed in the Affidavit, was allegedly gathering intelligence for S.A. Tyler on May 20, 2018 when the informant allegedly came into contact with Mr. Dancy. No facts alleged in the Affidavit by Detective DeGroot support

---

[12] State v. Novembrino, 105 N.J. 95, 107 (1987); citing *State v. Macri*, 39 *N.J.* 250 (1963).

how the informant knew about Mr. Dancy's alleged involvement in any criminal activity, where Mr. Dancy lived, what Mr. Dancy's residence looked like, or even what vehicle Mr. Dancy owned. Rather, information addressing these issues is stated in a very generalized format and does not attribute any basis of knowledge/awareness of such information to the informant. Furthermore, the Affidavit addresses how Mr. Dancy allegedly operates a t-shirt store and unlicensed barbershop in the rear of the store, and yet there is absolutely no indication of the source of those allegations, and if they were provided by informant.

When evaluating the totality of the circumstances, the Search Warrant was erroneously authorized based on a deficient Affidavit that included information about an informant's minimal alleged encounters with Mr. Dancy. The alleged encounters were at the direction of S.A. Tyler. No sufficient information has been provided by Detective DeGroot attesting to the reliability of the informant. Moreover, it is evident that the minimal allegations provided by the informant were not corroborated by Detective DeGroot's (nor the ECPO - NTF's) own investigation of Mr. Dancy. Detective DeGroot based his application for the Search Warrant on (1) a clearly unreliable informant who allegedly observed drug activity without a supportive showing of veracity or any basis of knowledge and (2) Mr. Dancy's criminal history—both of which cannot support a finding of probable cause.  Additionally, there was no probable cause for the Search Warrant subsequently issued on June 19, 2018 for Mr. Dancy's vehicle. The informant provided no alleged information about criminal activity being found in

Mr. Dancy's vehicle. Thus, a lack of probable cause renders the Search Warrants invalid and all evidence seized must be suppressed.

**SUB-POINT I (B)**

**"BAREBONES" AFFIDAVIT:**

An affidavit submitted to the court in support of a search warrant must provide "particularized facts linking the suspect and his residence to illegal drugs or any other criminal activities," and should not encompass a "'bare bones' composition of boilerplate language." [13] A "bare bones" affidavit is known as "an affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual [information or] circumstances regarding veracity, reliability, and basis of knowledge…" that would support a finding of probable cause. [14] In United States v. Weaver, the court analyzed how certain facts (the suspect's name, address, and description of the residence) the government cited in support of the warrant affidavit at issue, could have been obtained by anyone. 99 F.3d 1372, 1378–79 (6th Cir. 1996). In other words, it was a "bare bones" affidavit that contained conclusory statements from the affiant that did not supply incriminating facts or demonstrate the existence of probable cause. [15]

A search warrant affidavit will not be considered "bare bones" if the confidential informant's tip, included in the affidavit, provides a "substantial basis" for finding

---

[13] United States v. Weaver, 99 F.3d 1372, 1377 (6th Cir. 1996).
[14] Id.
[15] Id. at 1379.

probable cause. [16] This *substantial basis* entails: "(1) an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, [which] entitles [the informant's tip] to greater weight than might otherwise be the case;" and (2) corroboration of the tip through the officer's independent investigative work [which] is significant. [17] Ultimately, it is on the magistrate judge issuing the search warrant to first make a determination as to whether the affidavit included reliability, veracity, and a basis of knowledge of the informant providing the information/assertions—such that "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[18]

The case before this Court involved an invalid Search Warrant and a "barebones" Affidavit. The Affidavit contains a "bare bones" composition of boilerplate language in its exterior description of Mr. Dancy's residence. Additional generalized information is provided regarding  Mr. Dancy's vehicle. As acknowledged in United States v. Weaver, the Defense submits that the information in the Affidavit about Mr. Dancy's address, an exterior description of the residence, and his vehicle could have been obtained by anyone. That "barebones" information is not at all indicative of the informant's veracity, reliability, nor basis of knowledge.

Furthermore, the Affidavit depicts an alleged encounter that the informant had with Mr. Dancy on or about May 20, 2018 at his residence, yet no information is

---

[16] See footnote 8.
[17] See footnote 8.
[18] Weaver, 99 F.3d 1372, 1377 (6th Cir. 1996).

provided to support how the informant knew about Mr. Dancy's alleged involvement in criminal activity. Another encounter is alleged to have occurred on or about May 24, 2018 between the informant and Mr. Dancy at his store, yet it includes generalized assertions inconclusive of Mr. Dancy's involvement in any criminal activity. Moreover, the Affidavit alleges that the informant responded to Mr. Dancy's residence on June 15, 2018, yet there is no information about the seemingly suspicious alleged encounter that would support why the informant responded to the location and what, if any, conversations took place.

Overall, it is evident that the Affidavit used in support of the invalid Search Warrant must be considered "barebones" because it fails to sufficiently provide a "substantial basis" in support of alleged wrongdoing. Moreover, no "substantial basis" for a finding of probable cause can be found when the Affidavit lacks corroboration of the informant's "tip" through Detective DeGroot's (or other officers') independent investigative work. It is important to note that the same "barebones" boilerplate information provided in the Affidavit for Search Warrant CRO 460-06-18 was also included in the Affidavit for Search Warrant CRO 460-06-18 A & B. This Court must find that the "barebones" Affidavit is deficient, and a lack of probable cause renders the Search Warrant invalid.

## SUB-POINT I (C)

**UNRELIABLE INFORMANT:**

A search warrant affidavit that contains information from a confidential informant must be found reliable. To evaluate reliability, the issuing magistrate judge must consider the "veracity and basis of knowledge" of the confidential informant. [19] To satisfy the "veracity" factor, it must be demonstrated that,

> "the informant has proven reliable in the past, such as providing dependable information in previous police investigations… However, 'past instances of reliability do not conclusively establish an informant's reliability.' The current evidence must give the court an opportunity to make an independent evaluation of the informant's present veracity. Similarly, a statement that the police believe the informant is reliable because he 'did a job for [an officer] in the past,' without additional information, will not firmly establish veracity." [20]

Apart from analyzing veracity, the issuing magistrate must also consider the informant's "basis of knowledge" for supplying the information/assertions about a given suspect. The basis of knowledge factor evaluates "whether the informant obtained his information in a reliable manner… [and whether the informant's] tip reveals 'expressly or clearly' how the informant became aware of the alleged criminal activity."[21] Regardless of the evaluation of the informant's veracity and basis of knowledge, the information/assertions provided in the warrant affidavit is considered hearsay. Therefore, the court looks to "independent police 'corroboration

---

[19] State v. Keyes, 184 N.J. 541, 555–56 (2005).
[20] Id. at 556.
[21] See footnote 8.

[as] necessary to ratify the informant's veracity and validate the truthfulness of the tip' and [it] is considered 'an essential part of the determination of probable cause.'" [22]

Here, the confidential informant used in this case cannot be found reliable because the informant lacks veracity and a basis of knowledge in support of his allegations. In the Affidavit, Detective DeGroot alleges that he was contacted by S.A. Tyler and that is how he became aware of the informant. The informant had been utilized by S.A. Tyler for only seven months or less, and yet Detective DeGroot sought to assert that the informant was "reliable" based on the minimal assistance he provided S.A. Tyler during an investigation in New York. Beyond disclosure of the mere seven months that the informant was used, no facts have been included in the Affidavit to support how many investigations the informant was involved in with S.A. Tyler. Regardless, the alleged past instance(s) of the informant's involvement does not conclusively establish his reliability.

As addressed in State v. Keyes, this Court must be able to evaluate the evidence and make an independent evaluation of the informant's present veracity. Based on the allegations provided in the Affidavit, this Court will not be able to find any information to support the informant's veracity. Absolutely no information was provided to reveal expressly or clearly how the informant became aware of Mr. Dancy and any alleged criminal activity he may have been involved in.  Therefore, without a supportive finding of veracity and basis of knowledge, the informant cannot be considered reliable.

---

[22] See footnote 8.

## SUB-POINT I (D)

### INSUFFICIENT CORROBORATION:

An affidavit in support of a search warrant must not solely provide detailed information from a confidential informant, but rather such information should be sufficiently corroborated by independent police investigation. The court in <u>People v. French</u>, 201 Cal. App. 4th 1307, 1324 (2011) acknowledged that "where neither the veracity nor basis of knowledge of the informant is directly established, the information is not so detailed as to be self-verifying and there is no logistical or other reason why verification from other sources cannot be achieved, ... the failure to corroborate may be indicative that it was objectively unreasonable for the officer to believe in the existence of probable cause."[23] Demonstrating corroboration of an informant's information through police investigation is significant for determining whether a search warrant affidavit is sufficient. In other words, it is important to consider "…whether a reasonable officer in [the affiant's] position would have *known* that the affidavit, as it existed at the time it was to be presented to the magistrate, was legally insufficient without additional and more recent corroboration." [24]

There is an insufficient showing of probable cause when an officer only corroborates details of no criminal significance. The reviewing court must take into consideration "innocent details" (insufficiently) corroborated by the police that include providing an address, obtaining certain records, and other documentation in

---

[23] <u>People v. French</u>, 201 Cal. App. 4th 1307, 1324 (2011).
[24] <u>Id</u>.at 1324; citing <u>United States v. Leon</u>, 468 U.S. 897 (1984).

comparison to an officer whose sufficient corroboration was based on surveillance or an "observation of unusual civilian or vehicular traffic at the [targeted] address [or]…very short visits characteristic of drug trafficking."[25] The court in <u>People v. French</u>, 201 Cal. App. 4th 1307, 1319–20 (2011), acknowledged the usage of "innocent details," by stating how "courts take a dim view of the significance of "pedestrian facts" such as a suspect's physical description, his residence and his vehicles." Thus, it is highly pertinent that unverified information provided by an informant be sufficiently corroborated by pertinent facts and circumstances in order for probable cause to be established.

Corroboration will be deemed sufficient or adequate, if it "pertain[s] to the alleged criminal activity; [since] accuracy of information regarding the suspect generally is insufficient…However, the corroboration is sufficient if police investigation has uncovered probative indications of criminal activity along the lines suggested by the informant. Even observations of seemingly innocent activity provide sufficient corroboration if the anonymous tip casts the activity in a suspicious light." [26] Ultimately, without corroboration of more probative facts, there is no basis to conclude that the informant's information/assertions about the defendant (and potential drug dealing) can be deemed reliable. [27]

---

[25] <u>United States v. Weaver</u>, 99 F.3d 1372, 1379 (6th Cir. 1996); citing <u>United States v. Gibson</u>, 928 F.2d 250, 253 (8th Cir. 1991).
[26] <u>People v. French</u>, 201 Cal. App. 4th 1307, 1319–20 (2011).
[27]<u>Id</u>.

Here, the information provided by Detective DeGroot in the Affidavit was not sufficiently corroborated by independent police investigation such that a reasonable officer in Detective DeGroot's position would have known that the Affidavit was legally insufficient. There was no mention of any investigatory efforts made by Detective DeGroot nor any officers of the ECPO – NTF to corroborate the allegations made by the informant. Rather, only "innocent" or "pedestrian" details were provided in the Affidavit which included Mr. Dancy's address (only an exterior description of the residence) and his vehicle information. These details and facts that were included in the Affidavit bear no criminal significance and cannot support sufficient corroboration of independent police investigation.

The Affidavit failed to allege any information or basis for supporting the assertions made by the informant. Such independent police corroboration is necessary to ratify the informant's veracity. Detective DeGroot provided no alleged facts that would validate the informant's truthfulness. No information was included in the Affidavit to suggest that Detective DeGroot and members of the ECPO - NTF conducted surveillance outside of Mr. Dancy's residence or outside of his shop. Furthermore, no information was provided to suggest that the ECPO – NTF observed unusual civilian or vehicular traffic or very short visits characteristic of drug trafficking at Mr. Dancy's residence. There was no mention of surveillance or police observations in the Affidavit because no such independent police investigation was rendered. Without corroboration of the facts alleged by the informant, there is no basis to conclude that the informant is

reliable. Thus, the Affidavit is factually insufficient and there is no probable cause to support the Search Warrant.

## POINT II

### THE POLICE CONDUCTED AN UNLAWFUL STOP OF MR. DANCY'S VEHICLE BECAUSE THERE WAS NO REASONABLE SUSPICION TO JUSTIFY THE STOP AND NO SEARCH WARRANT FOR THE VEHICLE EXISTED AT THE TIME.

An automobile stop can be conducted when there is an objective basis to find reasonable suspicion that criminal activity has been or will be committed, and such a stop cannot be based on "'inarticulate hunches'" nor an arresting officer's subjective good faith." [28]The officer conducting the stop "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion."[29] Under the Fourth Amendment, an officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Bohman, 683 F.3d 861, 867 (7th Cir. 2012); (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)).

Certain circumstances may permit a police officer to conduct a stop without the officer having additional reasonable suspicion. "When the police have a warrant to search a house, the detention of individuals found leaving that house is

---

[28] State v. Pineiro, 181 N.J. 13, 21 (2004).
[29] Id. at 21; citing State v. Arthur, 149 N.J. 1, 7–8 (1997).

17

constitutionally reasonable because of 'the nature of the articulable and individualized suspicion on which the police base the detention of the occupant of a home subject to a search warrant.'" [30] On the other hand, suppression of evidence is justified when the police conduct a motor vehicle stop just to identify the car's occupants when "there is neither probable cause to believe nor reasonable suspicion that the car is being driven contrary to the laws governing the operation of motor vehicles or that either the car or any of its occupants is subject to seizure or detention in connection with the violation of any other applicable law." [31]

Here, the U.S. Government seems to be asserting reasonable suspicion based on a "mere hunch" or subjective suspicion by the three detectives that sought to conduct an unlawful motor vehicle stop on Mr. Dancy.  The U.S. Government has alleged that Mr. Dancy was not stopped for committing a motor vehicle violation, but instead the stop was "based on the items earlier recovered from his residence." [32]  This specific basis cannot be used to justify a valid stop. The Defense submits that there was no supportive finding of reasonable suspicion to conduct the stop of Mr. Dancy's vehicle.

Additionally, the detectives involved in conducting the stop of Mr. Dancy's vehicle did not at any point observe Mr. Dancy leaving his residence. While the (invalid) Search Warrant was authorized for Mr. Dancy's residence, Mr. Dancy was not located inside of his residence nor seen leaving his residence at the time the Warrant

---

[30] United States v. Bohman, 683 F.3d 861, 865 (7th Cir. 2012); citing Michigan v. Summers, 452 U.S. 692, 702–03 (1981).
[31] Id. at 867.
[32] See footnote 3.

was executed. Therefore, the detectives had no lawful basis for conducting a stop of his vehicle nor a basis to detain him (with no arrest warrant). Moreover, at the time no Search Warrant had been court authorized for the search of Mr. Dancy's vehicle. The Defense submits that the stop was conducted for the purpose of identifying Mr. Dancy and in the hopes of seizing evidence of criminal activity inside of his vehicle. As acknowledged in <u>United States v. Bohman</u>, neither basis would justify the detectives' actions in conducting the stop and subsequently arresting Mr. Dancy, but would rather justify suppression of the evidence seized. Therefore, in the absence of reasonable and articulable suspicion and no search warrant, the stop of Mr. Dancy' s vehicle must be considered unjustified and unlawful.

## POINT III

## <u>MR. DANCY IS ENTITLED TO A FRANKS HEARING TO CHALLENGE THE ALLEGATIONS MADE IN THE SEARCH WARRANT AFFIDAVIT DISPLAYING A RECKLESS DISREGARD FOR THE TRUTH AND MATERIAL OMMISISONS OF FACT.</u>

A defendant is entitled to a Franks Hearing upon request, pursuant to the Fourth and Fourteenth Amendments, when he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and… the allegedly false statement [or material omission] is necessary to the finding of probable cause…"[33] At this hearing, the defendant bears the burden of showing—by a preponderance of the evidence—that the search warrant affidavit encompassed a reckless disregard for truth. If it shown that, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant *must be* voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."[34]

The court in <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) emphasized the significance of the information provided in a warrant affidavit that is derived from an informant's tip and the importance of "the magistrate who must determine independently whether there is probable cause…" While an affidavit supporting a search warrant is presumed valid, that presumption can nevertheless be overcome by allegations of deliberate

---

[33] <u>Franks v. Delaware</u>, 438 U.S. 154, 155–56 (1978)
[34] <u>Id</u>. at 154-55.

falsehood or of reckless disregard for the truth that were made by the affiant, rather than the informant. Id. at 172. "Suppression is an appropriate remedy if the [magistrate] judge, in issuing the warrant, was misled by information in the affidavit that the affiant knew or would have known it was false except for the affiant's reckless disregard for the truth. Evidence should be suppressed only if the affiant-officer could not have harbored an objectively reasonable belief in the existence of probable cause." [35]

Ultimately, it is on the defendant to establish the required "substantial preliminary showing" of falsity or material omissions of fact(s) in the affidavit. A defendant challenging the validity of a search warrant must prove "that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable." [36] Upon establishment of this proof, the defendant's right to an evidentiary Franks Hearing must be granted. [37]

Here, Judge Ali reviewed and approved a Search Warrant and Affidavit that contained material omissions of fact and a reckless disregard for the truth. First, as stated above, no information was provided to support how the confidential informant was reliable. S.A. Tyler had utilized the informant on a New York investigation and apart from that secondhand information (from a third party), no other information was provided by Detective DeGroot to demonstrate the informant's reliability with regard to the case before this Court. Detective DeGroot failed to provide detailed information

---

[35] United States v. Gibson, 928 F.2d 250, 253–54 (8th Cir. 1991)
[36] State v. Keyes, 184 N.J. 541, 554 (2005).
[37] United States v. Pavulak, 700 F.3d 651, 665 (3d Cir. 2012).

that would attest to the informant's veracity and basis of knowledge. General "innocent details" were provided about the exterior of Mr. Dancy's residence. Yet, there were no details provided about the interior of Mr. Dancy's residence. The informant allegedly had access to the inside of Mr. Dancy's residence, and yet there was no information to support proof of same.

Secondly, the minimal assertions alleged by the informant were not corroborated by independent police investigation. While general information was provided—allegedly by the informant—about Mr. Dancy's vehicle—no further information was provided about how or when the informant retrieved the vehicle information and what his specific observations were. The police merely corroborated that Mr. Dancy owned the vehicle. Arguably, the informant alleged the information about Mr. Dancy's vehicle around the same time as the other allegations/observations, and yet Detective DeGroot did not seek a Search Warrant for Mr. Dancy's vehicle at that time.

Detective DeGroot failed to engage in any investigation to corroborate any of the informant's "tips." Rather, Detective DeGroot solely depended on a third party's hearsay opinions as to the informant's reliability. As explained in State v. Keyes, S.A. Tyler's past involvement with the informant cannot be the sole basis for determining the informant's present reliability and veracity. No surveillance was conducted nor were observations of any criminal activity made to corroborate the alleged information provided in the Affidavit. Rather, the Affidavit relies on the alleged minimal encounters of an informant without any further investigation.

Thirdly, it is clear that the Search Warrant Affidavit contains a reckless disregard for the truth or material omissions of fact as certain information is included without further explanation or proof. The Affidavit addresses how the Honorable James Donohue, J.S.C. reviewed an affidavit and search warrant in relation to this case and approved same on June 4, 2018.[38] The Defense has yet to receive a copy of this affidavit and search warrant that was allegedly presented to Judge Donohue. If in fact it was the same Search Warrant and Affidavit addressed in this motion, said documented proof has never been provided by the Assistant U.S. Attorney. Moreover, no information has been provided that explains the result of that affidavit and search warrant being approved. Due to a serious omission of fact and reckless disregard for the truth, Defense is unaware if that warrant was ever executed after its alleged court authorization on June 4, 2018.  Similarly, it has been alleged that the informant "responded" to Mr. Dancy's residence on June 15, 2018. It is unclear whether the informant responded in cooperation with S.A. Tyler's investigation or pursuant to the supposed investigation by the ECPO - NTF.

Apart from the Search Warrant, a clear reckless disregard for the truth can be exhibited in the U.S. Government's actions to indict Mr. Dancy. With regard to the Indictment, one of Mr. Dancy's charges included possession of a .223 caliber semiautomatic rifle. Yet, this firearm was not at all included in the Return of Search Warrant, upon execution of said Warrant on Mr. Dancy's residence—located at 640

---

[38] See footnote 2.

Chancellor Avenue, Irvington, New Jersey. [39] Rather, that exact firearm appears on the Return of Search Warrant for the other residence—located at 790 Holly Place, 1st floor, Rahway, New Jersey. The U.S. Government has absolutely no basis to charge Mr. Dancy for a firearm that was not discovered and seized inside of his residence. No information has been provided by the U.S. Government to support any allegations that Mr. Dancy is a resident of 790 Holly Place, Irvington, New Jersey. Therefore, no evidence seized from that residence should be attributed to Mr. Dancy. Such a significant and unlawful error should justify dismissal of the Indictment.

Overall, it is clear that the Defense has made a substantial preliminary showing that a reckless disregard for the truth and material omissions of fact have been made in the pursuit of securing the invalid Search Warrant. After a thorough review of this case, it will become clear to this Court that the Search Warrant cannot be sustained, and the evidence seized as a result of its execution must be suppressed. Additionally, the Defense has demonstrated that Mr. Dancy is entitled to a Franks Hearing.

---

[39] See footnote 5.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that all evidence seized as a result of the invalid Search Warrants be suppressed and Mr. Dancy's request for a Franks Hearing be granted.

Respectfully submitted,

*S/ Adrienne D. Edward*
_____
ADRIENNE D. EDWARD
Attorney for Defendant
Darryl Dancy

cc: Jonathan W. Romankow, Assistant United States Attorney
    Darryl Dancy
    File