UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Kevin McNulty |
| | : | |
| v. | : | Crim. No. 19-658 (KM) |
| | : | |
| DARRYL DANCY | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS**

CRAIG CARPENITO
United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
(973) 645-2700

On the Memorandum:

JONATHAN W. ROMANKOW
Assistant United States Attorney

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ..................................................................................... 1

ARGUMENT .......................................................................................................... 6

I. THIS COURT SHOULD DENY DEFENDANT'S MOTION TO SUPPRESS BECAUSE UNDER THE TOTALITY OF THE CIRCUMSTANCES, THE STATE COURT JUDGE HAD A SUBSTANTIAL BASIS TO CONCLUDE THAT THERE WAS A FAIR PROBABILITY THAT CONTRABAND OR EVIDENCE OF A CRIME WOULD BE FOUND AND THEREFORE TO ISSUE THE SEARCH WARRANTS. ....................................................... 6

    A. The Standard of Review under Gates is Highly Deferential to the Issuing Judge's Finding................................................................... 6

    B. The Standard of Probable Cause is the Probability of Criminal Activity.................................................................................. 8

    C. The Proper Test is whether Probable Cause Existed under the Totality of the Circumstances ................................................... 8

    D. Alternatively, the Fruits of the Search Warrant Were Admissible in Light of the Agent's Good Faith Reliance Upon the Judge's Finding of Probable Cause. .................................................................. 10

II. THE MOTOR VEHICLE STOP WAS LAWFUL. ...................................... 11

III. DEFENDANT'S REQUEST FOR A FRANKS HEARING SHOULD LIKEWISE BE DENIED. .................................................................................... 12

    A. Defendant Has Not Made A Substantial Preliminary Showing That The Affiant Knowingly or Recklessly Included A False Statement In, Or Omitted Facts From, The Affidavits........................................ 13

    B. Even If This Court Analyzed The Search Warrant Affidavit Without Reference To Supposedly False Or Omitted Statements, Such Statements Were Not Necessary To A Finding Of Probable Cause. 16

CONCLUSION ..................................................................................................... 17

**INTRODUCTION**

On September 17, 2019, defendant Darryl Dancy ("Dancy") was charged in a one-count Indictment with possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  On November 28, 2019, Dancy filed a motion to suppress. The Government respectfully submits this memorandum of law in opposition to the motion to suppress, and further respectfully reserves its right to supplement its responses by oral argument.

**STATEMENT OF FACTS**

On June 18, 2018, the Essex County Prosecutor's Office ("ECPO") applied to the Honorable Mark Ali, J.S.C. in the Superior Court of New Jersey, Essex County, New Jersey, for a search warrant for Dancy's residence at ▮▮▮ ▮▮▮▮▮▮▮▮▮▮ in Irvington, New Jersey (the "Dancy Residence").  The affidavit in support of the search warrant application set forth that in late May 2018, the ECPO was contacted by DEA Special Agent Eric Tyler and advised that a DEA Confidential Source ("CS") had information about Dancy's illegal activities at the Dancy Residence in Irvington.  The affidavit went on to state that Special Agent Tyler informed ECPO that he had been working with the CS for the past seven months, and that the CS had been proven to be reliable in his/her work with Special Agent Tyler.  Specifically, the CS had provided information which had led to the seizure of large quantities of heroin, United States currency, and a firearm.  Additionally, the CS was currently working with Special Agent Tyler on an investigation in New York.

1

As set forth in the search warrant affidavit, the CS reported the following about a meeting which he/she had with Dancy on or about May 20, 2018 at the Dancy Residence:

> "While at the location, the CS was conversing with a black male known to the CS as 'Darryl.' Darryl is known to live at the location and operates a black Chevrolet Silverado bearing New Jersey Registration H45JVS. Darryl is known to distribute large quantities of CDS-Heroin to various individuals (midlevel narcotic distributors) from out of the State of New Jersey. While inside the location the CS observed a kilogram of suspected CDS-Heroin, to which both parties were discussing various ways to 'cut' the CDS-Heroin. (Cut-common street terminology for diluting the product to double the amount of the product for sale). Also while inside the apartment on or about September 17, the CS observed two (2) AR-15 style assault rifle[s] which Darryl related to the CS was made for him by a friend. Darryl further stated that he had another similar rifle and that he could get one for the CS to purchase, which would cost approximately $2,000. Both of these weapons Darryl stated were ghost guns. (Ghost gun – a firearm which was manufactured without a serial number is and difficult to trace the weapon's origins.) which he obtained from a friend in South Jersey."

The search warrant affidavit then continued to state that the CS again met with Dancy on May 24, 2018 at Dancy's store (which was at the rear of the Dancy Residence) in order to gather further information about Dancy and his operation. As set forth in the affidavit, during this meeting, "the CS inquired about the previously observed narcotics and weapons to which Darryl related to the CS that he would show him the previously mentioned items the next time the CS is at Darryl's residence."

Sure enough, as further detailed in the affidavit, on June 15, 2018, the CS met with Dancy again at the Dancy Residence "and observed a two-toned gray and black backpack on the kitchen table. The backpack contained one

kilogram of suspected CDS-Heroin which was tan in color and inside of a clear zip lock style bag."

On June 18, 2018, based on the ample probable cause set forth in the search warrant affidavit, Judge Ali authorized a search of the Dancy Residence.

Early the next morning, on June 19, 2018, law enforcement executed the search warrant on the Dancy Residence. Dancy was not home at the time. During the search, law enforcement found, among other things, the following items:

> (a) a stolen 12-gauge Mossberg Maverick Model 88 pump-action shotgun, bearing serial number MV69340K, with a barrel length of less than 18 inches;
>
> (b) two .223 caliber semiautomatic rifles with unknown manufacturer, both bearing no serial number;
>
> (c) a stolen .223 caliber Kel-Tec Model PLR16 semiautomatic pistol, bearing serial number POC58;
>
> (d) a stolen .45 caliber Smith & Wesson Model SW1911PD semiautomatic handgun, bearing serial number JRJ2091, which was loaded with eight rounds of .45 caliber ammunition;
>
> (e) a .40 caliber Smith & Wesson Model SW40VE semiautomatic handgun, bearing a defaced serial number, which was loaded with thirteen rounds of .40 caliber ammunition;
>
> (f) a .38 caliber Smith & Wesson Model 638-3 revolver, bearing serial number CMY7698;
>
> (g) a .22 caliber Iver Johnson Model Supershot Sealed Eight revolver, bearing serial number L35080, which was loaded with eight rounds of .22 caliber ammunition;
>
> (h) a 9-millimeter Pietro Beretta Model 92FS semiautomatic handgun, bearing serial number J25615Z, which was loaded with fifteen rounds of 9-millimeter ammunition; and

      (i) a stolen .40 caliber Kel-Tec Model SUB-2000 semiautomatic rifle, bearing serial number E2156, which was loaded with fifteen rounds of .40 caliber ammunition.

Additionally, law enforcement found two firearms silencers, hundreds of rounds of ammunition in various calibers, large quantities of raw heroin, large numbers of individual dosage units of heroin, drug packaging paraphernalia (including stamps, thousands of glassine envelopes, a money counting machine, digital scales), approximately $22,370 in cash, and a bulletproof vest.

A few hours after the search was conducted, law enforcement attempted to locate Dancy by going to his girlfriend's residence at ███████ in Rahway, New Jersey (the "Rahway Residence"). Dancy's girlfriend advised law enforcement that Dancy was not there, and permitted them to come into the residence in order to confirm that Dancy was not present. As law enforcement checked the residence, they observed several firearms, as well as drug-packaging paraphernalia in plain view.

Around this same time, other law enforcement officers observed Dancy operating his 2015 Chevrolet Silverado (the "Dancy Vehicle"). A motor vehicle stop was conducted, and Dancy was arrested.

Law enforcement then sought and obtained search warrants for the Rahway Residence and the Dancy Vehicle. The affidavit in support of those searches contained the same details set forth in the affidavit for the Dancy Residence, as well as new information about the Rahway Residence and the motor vehicle stop of Dancy.

4

During the search of the Rahway Residence, law enforcement found, among other things, the following items:

    (a) a 12 gauge Kel Tec Shotgun, bearing serial number X0P11;

    (b) a .223 caliber Anderson Manufacturing Model AM-15 semiautomatic rifle, bearing serial number 16052747 (with a 30-round magazine); and

    (c) .45 caliber Glock semiautomatic handgun, bearing serial number BEVE672.[1]

Additionally, law enforcement found large quantities of raw heroin, large numbers of individual dosage units of heroin, drug packaging paraphernalia (including stamps, numerous glassine envelopes, a money counting machine, digital scales), and approximately $1,220 in cash.

During the search of the Dancy Vehicle, law enforcement found, among other things, the following items:

    (a) black and gray backpack;
    (b) an Apple iPhone;
    (c) an Apple iPad;
    (d) a laptop and charging devices;
    (e) various pieces of mail belonging to Dancy; and
    (f) $168 in U.S. currency.

---

[1] It was later determined that Dancy's girlfriend legally owned this firearm.

**ARGUMENT**

I. **THIS COURT SHOULD DENY DEFENDANT'S MOTION TO SUPPRESS BECAUSE UNDER THE TOTALITY OF THE CIRCUMSTANCES, THE STATE COURT JUDGE HAD A SUBSTANTIAL BASIS TO CONCLUDE THAT THERE WAS A FAIR PROBABILITY THAT CONTRABAND OR EVIDENCE OF A CRIME WOULD BE FOUND AND THEREFORE TO ISSUE THE SEARCH WARRANTS.**

Defendant has asserted that the search warrant affidavits in this case lacked probable cause and that therefore the Court should suppress the evidence obtained pursuant to the searches of the Dancy Residence and the Dancy Vehicle. Under the prevailing legal standards, this motion has no merit and should be denied.

The Government maintains that under the totality of the circumstances, the Superior Court Judge who issued the warrants had a substantial basis to conclude that there was a fair probability that contraband or evidence of a crime would be found at the locations which were the subject of search warrants. Illinois v. Gates, 462 U.S. 213 (1983). That is all that is required. Id. The Government first will explore the standard of review under Gates, then summarize and review the probable cause supporting the warrants, and end with a discussion of the totality of the circumstances approach.

   A. **The Standard of Review under Gates is Highly Deferential to the Issuing Judge's Finding.**

The Supreme Court has stated that a reviewing court called upon to assess the sufficiency of a search warrant affidavit should pay "great deference" to the initial probable cause determination made by the judge. Ornelas v. United States, 517 U.S. 690, 698-99, 702 (1996); Gates, 462 U.S. at 236-38;

accord United States v. Williams, 3 F.3d 69, 72 (3d Cir. 1993); see also United States v. Ventresca, 380 U.S. 102, 109 (1965) (directing that doubtful or marginal cases in this area be resolved in accordance with the preference given to warrants).

Indeed, this Court should not make its "own assessment as to whether probable cause existed." United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993); see also United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) ("a reviewing court may not conduct a de novo review of a probable cause determination") (citing Gates, 462 U.S. at 236); accord Williams, 3 F.3d at 72. Rather, the Court must uphold the warrants as long as the issuing judge had a "substantial basis" for concluding by "a fair probability" that contraband or evidence of a crime would be found at the Dancy Residence and the Dancy Vehicle. Conley, 4 F.3d at 1205 & n.2 (quoting Gates, 462 U.S. at 238). The Third Circuit has characterized the substantial basis standard as "minimal," Conley, 4 F.3d at 1205, and has explained that "'[t]he resolution of doubtful or marginal cases in this area should be largely determined by a preference to be accorded to warrants.'" United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (quoting Jones, 994 F.2d at 1057-58, (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965))).

### B. The Standard of Probable Cause is the Probability of Criminal Activity.

In <u>Gates</u>, the Supreme Court expounded at great length about the meaning of probable cause. "It is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." 462 U.S. at 235 (citations and quotations omitted). "[P]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." <u>Id.</u> at 231-32 (citations and quotations omitted). It is clear, however, that because a judge need only find that there is a fair probability that evidence of a crime will be found, <u>United States v. Shields</u>, 458 F.3d 269, 277 (3d Cir. 2006), a search warrant application need not establish an "absolute certainty that evidence of criminal activity will be found at a particular place," <u>United States v. Yusuf</u>, 461 F.3d 374, 390 (3d Cir. 2006), and the fact that law enforcement agents could have done more investigation prior to applying for the warrant is "of no import," <u>Shields</u>, 458 F.3d at 280.

### C. The Proper Test is whether Probable Cause Existed under the Totality of the Circumstances.

In <u>Gates</u>, the Supreme Court advised courts to consider the totality of the circumstances when evaluating the probable cause of a search warrant. In general, courts apply this standard by first determining the relevant information within the affidavit, and then evaluating the credibility and reliability of that information. Finally, courts must determine if reasonable

8

inferences can be drawn from the credible information to support a conclusion that there exists a fair probability that contraband or evidence of a crime will be found at the designated location.  See, e.g., Williams, 3 F.3d 69; Conley, 4 F.3d 1200.

The Supreme Court in Gates held that a state court judge had a substantial basis to find probable cause where a search warrant was based upon an anonymous letter, which included specific, factual, and timely information relating to a narcotics trafficking operation, and where law enforcement officers corroborated some of that information through surveillance.  Under those facts, the Supreme Court held that the issuing judge had a substantial basis on which to find probable cause.  In particular, the Court relied upon the degree to which the anonymous tip was corroborated by independent investigative work as well as the fact that the letter contained such detailed information that it could only have come from someone with actual knowledge of the drug operation.

Here, there is far more than that.  The CS provided law enforcement with detailed information about his/her three meetings with Dancy, including his/her detailed discussions with Dancy about heroin and firearms, as well as his/her observations of large amounts of heroin and at least two firearms (neither of which had serial numbers) in the Dancy Residence.  Law enforcement clearly had ample probable cause, which was presented in the affidavits in support of the search warrants.

### D. Alternatively, the Fruits of the Search Warrant Were Admissible in Light of the Agent's Good Faith Reliance Upon the Judge's Finding of Probable Cause.

Even if the warrants were somehow defective, the searches in this case were proper because the warrants were issued by a neutral and detached Judge and the affiant's reliance on the warrants were objectively reasonable. See United States v. Leon, 468 U.S. 897 (1984). In Leon, a judge issued a warrant based on an affidavit whose most recent allegation of criminal activity was six months old. See id. at 901-02. The district court suppressed the evidence seized, and the Ninth Circuit affirmed, finding that the information in the affidavit was "fatally stale." Id. at 903-04. Accepting that the information was stale and the warrant was not supported by probable cause, the Supreme Court nonetheless reversed the suppression, holding that the exclusionary rule could not be applied in such circumstances. Id. at 905, 925-26.

The Leon Court concluded that evidence obtained in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate could not be suppressed: "[A] warrant issued by a magistrate normally suffices to establish" that reliance on the warrant was objectively reasonable. Id. at 922 (citation omitted); 920-21 & n.21 (ordinarily "an officer cannot be expected to question the magistrate's probable-cause determination"). Only if the warrant was based on a "bare-bones" affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" can the

10

evidence seized be suppressed.  Id. at 923 & n.24, 926.[2]  The good faith presumption can be overcome only if a reasonable well-trained officer would have realized that the underlying affidavit was ""so lacking in probable cause as to render official belief in its existence <u>entirely</u> <u>unreasonable</u>."  Id. at 923 (emphasis added); see also Williams, 3 F.3d at 74.

In the present case, the affidavits were clearly not "bare bones," as the defendant claims.  Not only was the information contained in the affidavits more than ample to supply probable cause, they also clearly provided sufficient indicia that the Judge's belief in probable cause was not "entirely unreasonable."  Leon, 468 U.S. at 923, 926.  This in itself is an independent grounds for rejecting suppression.  Id. at 925.

## II.   THE MOTOR VEHICLE STOP WAS LAWFUL

Defendant claims that the motor vehicle stop of Dancy was unlawful. However, Defendant's claim fails for one simple reason – the police, after finding numerous illegal guns, drugs, and drug paraphernalia in the Dancy Residence, had more than ample probable cause to arrest Dancy.  Therefore, when they observed Dancy driving in the Dancy Vehicle, the police had justification for conducting a motor vehicle stop and placing Dancy under arrest.

---

[2]   This inquiry is not based on the subjective views of the officers, but on the objective reasonableness of reliance on the magistrate's determination.  Id. at 919 n.20, 922 n.23.

11

### III. DEFENDANT'S REQUEST FOR A FRANKS HEARING SHOULD BE DENIED

Defendant is not entitled to a Franks hearing because he cannot satisfy either prong of the two-part test. In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that, in limited scenarios, "a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant subsequent to the ex parte issuance of the warrant." United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006). This procedure, now referred to as a Franks hearing, "allow[s] a defendant to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid." Id. Critically, though, "the right to a Franks hearing is not absolute." United States v. Pavulak, 700 F.3d 651, 665 (3d Cir. 2012). Rather, a defendant who seeks to suppress evidence on the ground that the affiant misstated facts in the probable cause affidavit bears a heavy burden. Franks, 438 U.S. at 155.

First, the defendant must "make a 'substantial preliminary showing' that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit." Pavulak, 700 F.3d at 665; accord Franks, 438 U.S. at 155-56. "In order to make this preliminary showing, the defendant cannot rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." Yusuf, 461 F.3d at 383 n.8. Second, the defendant must "demonstrate that the false

12

statement or omitted facts are 'necessary to the finding of probable cause.'" Pavulak, 700 F.3d at 665 (quoting Yusuf, 461 F.3d at 383-84). Defendant has failed to meet this "heavy burden," and consequently, his request for relief should be denied.

### A. Defendant Has Not Made a Substantial Preliminary Showing That The Affiant Knowingly or Recklessly Included a False Statement In, Or Omitted Facts From, The Affidavits.

Defendant cannot demonstrate that Detective DeGroot knowingly or recklessly included a false statement in, or omitted facts from, the affidavits. As is well-established, Franks only "protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead." United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990) (emphasis added) (citing United States v. Reivich, 793 F.2d 957 (8th Cir. 1986)). Consequently, "a Franks hearing is only merited in cases of omissions in 'rare instances.'" United States v. Graham, 275 F.3d 490, 506 (6th Cir. 2001)). Moreover, Franks itself makes clear "that not all statements in an affidavit have to be true," as in, factually correct; instead, "the statements [must] be 'believed or appropriately accepted by the affiant as true.'" United States v. Campino, 890 F.2d 588, 592 (2d Cir. 1989) (quoting Franks, 438 U.S. at 165). And "allegations of negligence or innocent mistake are insufficient." Franks, 438 U.S. at 171. Here, Defendant seeks a Franks hearing based on three claimed errors in the affidavits that supported the applications for search warrants of the Dancy Residence and the Dancy Vehicle. None meet the threshold to satisfy prong one.

The first is that the search warrant affidavits did not contain any

13

information to support how the CS was reliable. However, this is simply not accurate. The affidavit accurately set out that the CS had provided information to law enforcement for several months, which information had been proven reliable through law enforcement corroboration. Specifically, the affidavit stated:

> "S/A Tyler is assigned the New York Field Office and has been utilizing a confidential source, herein referred to as CS, for approximately the past seven (7) months. Said CS is proven and reliable in his/her work with S/A Tyler, which has lead to the seizure of large quantities of CDS-Heroin, US Currency, and a firearm. This CS is also currently working an active investigation with S/A Tyler in New York."

Defendant's "mere conclusory allegation[]" about the CS's prior cooperation with law enforcement and his "mere desire to cross-examine" the individual who provided information about his criminal activities are wholly insufficient to demonstrate a substantial preliminary showing as required for a Franks hearing. Yusuf, 461 F.3d at 383 n.8.

The second claimed error in the affidavits is that law enforcement did not corroborate any of the information provided by the CS. This is also not accurate. As detailed in the affidavits, Dancy was only known to the CS as "Darryl." But law enforcement took steps to corroborate the information that the CS provided and determine the identity of Dancy. Specifically, as set forth in the affidavits:

> "The CS provided S/A with the license plate for Darryl's vehicle, and after a search of the New Jersey Motor Vehicle Database the registered owner of the vehicle was found to be Darryl Dancy ▮▮▮▮▮▮▮▮▮▮). A photograph was then provided to the CS who

14

>positively identified Dancy as the individual whose house he/she was in and observed the previously mentioned narcotics and weapons."

Additionally, the affidavits explained that law enforcement checked with PSEG and determined that Darryl Dancy was the subscriber for the Dancy Residence. Therefore, it is clear that law enforcement independently verified who Dancy was and that he lived at the address where the CS met with Dancy.

Defendant offers no authority or case law which requires any more corroboration than that which was made by law enforcement in this case. The reliable CS's observations were sufficient to establish the probable cause necessary to support the issuance of the search warrants.

The third claimed error in the affidavits is that they contain "a reckless disregard for the truth or material omissions of fact as certain information is included without further explanation or proof" specifically, that there is not more information in the affidavits about the June 4, 2018 affidavit and search warrant presented to Judge Donohue. However, Dancy is making much ado about nothing. A June 4, 2018 affidavit was indeed presented to Judge Donohue in support of a search warrant for the Dancy Residence, and a search warrant was issued.[3] However, since law enforcement did not execute the search warrant

---

[3] This Office is not in possession of the June 4, 2018 affidavit and search warrant. However, they have been requested from Essex County and will be provided to the defense as soon as they are received. In the meantime, Detective DeGroot has advised this Office that the facts set forth in the June 4 affidavit are the same as those set forth in the June 18 affidavit, with exception of any events that occurred subsequent to June 4.

within the required ten-day period, a new affidavit and search warrant were subsequently presented on June 18, 2018 to Judge Ali.

Last, Defendant claims that the erroneous inclusion in the Indictment of a .223 caliber rifle found in the Rahway Residence shows a reckless disregard for the truth by the Government which justifies dismissal of the Indictment. However, Dancy's call for such a drastic measure is misplaced. The Government was prepared to present a Superseding Indictment to the Grand Jury on December 10, 2019 which removed the .223 caliber rifle round in the Rahway Residence. Unfortunately, on that date the case agent was called to the scene of a shooting in Jersey City and could not testify in the Grand Jury. As such, the presentation of the Superseding Indictment had to be rescheduled for a later date.

### B. Even If This Court Analyzed The Search Warrant Affidavits Without Reference to Supposedly False Or Omitted Statements, Such Statements Were Not Necessary To a Finding of Probable Cause.

While Defendant has not even come close to making a "'substantial preliminary showing' that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit," even if he had, he still would not be entitled to a Franks hearing because he cannot "demonstrate that the false statement or omitted facts are 'necessary to the finding of probable cause.'" Pavulak, 700 F.3d at 665. Because there "remains sufficient content in the warrant affidavit to support a finding of probable cause" even when Defendant's

16

complained-of errors are accounted for, "no hearing is required." Franks, 438 U.S. at 171-72.

In sum, Defendant has not demonstrated either "that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit" or that the false statement or omitted facts are 'necessary to the finding of probable cause.'" Pavulak, 700 F.3d at 665 (quoting Yusuf, 461 F.3d at 383-84). He certainly has not made a "substantial preliminary showing," Pavulak, 700 F.3d at 665, or provided anything beyond "mere conclusory allegations," Yusuf, 461 F.3d at 383 n.8; accord Franks, 438 U.S. at 155-56. Consequently, Defendant is not entitled to a Franks hearing on any of his claims of error, either individually or collectively.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court deny Defendant's motion to suppress and deny his request for a Franks hearing.

Respectfully Submitted,
CRAIG CARPENITO

*s/Jonathan W. Romankow*

JONATHAN W. ROMANKOW
Assistant United States Attorney

Date: December 13, 2019