**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES <br> Plaintiff <br> V. <br> DARRYL DANCY <br> Defendant | December 24, 2022 <br><br> Case #: 19-658 (KM) <br><br> **Omnibus Motion** <br> - USC 3164 <br> - USC 3142 <br><br><br> Applicable Statutes <br><br> Constitutional Amendment 6 |

# Table of Contents

I.   3164 Analysis ............................................................................................................. 2

II.  3142 Analysis ............................................................................................................. 5

  A.   Gravity of charges ............................................................................................ 6

  B.   The degree to which defendant poses a risk of flight or danger to the community ............................................................................................................. 7

  C.   The strength of the government's case on the merits ................................. 8

  D.   The length of detention that has already occurred. ................................... 10

  E.   Complexity of the case and whether the government's legal strategy has delayed the case ................................................................................................... 10

## I.   3164 Analysis

**United States v Cordova, 1998 U.S. Dist Lexis 22890** reads, <u>18 U.S.C.S. 3164</u>(a) provides that the trial of a defendant who is being held in pretrial detention "solely because he is awaiting trial" or who, while on release, has been designated as "high risk" by the government, "shall be accorded priority." The trial of such a defendant shall commence not later than 90 days following the beginning of such continuous detention or designation of high risk by the government. <u>18 U.S.C.S. 3164</u>(b). In computing the 90-day figure, the court must exclude those time periods enumerated in <u>18 U.S.C.S. 3161</u>(h).
**Valencia-Gamboa, 2021 U.S. Dist Lexis 19883 (M.D. Fl. 2021)** The Eleventh Circuit has recognized that if a defendant "has been detained for more than 90 non excludable days, as defined by 18 U.S.C. § 3161(h), the clear language of [section 3164] requires that an order of release must issue from this court." United States v. Gates, 935 F.2d 187, 188 (11th Cir. 1991) (citing United States v. Tirasso, 532 F.2d 1298, 1299-1300 (9th Cir. 1976)). The 90-day period under the Act begins to run at the time a defendant is in federal custody, on federal charges, pursuant to a pretrial detention order issued by a federal judicial officer.
**United States v. Blackmon, 874 F.2d 378, 381 (6th Cir. 1989).** As applied here, that would mean that the clock began to run on July 12, 2018 when the Defendant was arrested, on the basis of a criminal Complaint, and held in pretrial detention by order of the Magistrate Judge. Defendant has had no detainers and has been held in continued custody of the government since this arrest. Defendant now moves for immediate release under conditions set by the court.

In calculating relevant days necessary under 3164 defense relies on the following case law and calculations:

***United States v. Brooks***, 687 F.2d 517 (3rd Cir, 1982) makes it clear that a continuance cannot be backdated, reading, "a judge may not grant an ends of justice continuance nunc pro tunc, providing after the fact justification for unauthorized delays. The district court must consider the matter at the outset and determine whether the ends of justice require that the trial be postponed." Other circuits support this position. The 10th Circuit, for example, in ***United States v. Koeber***, 2014 US Dist Lexis 113839 (10th Cir, 2014) has held "that the STA doesn't allow a district court to retroactively grant ends of justice continuances. Congress intended that the decision to grant an ends of justice continuance be prospective, not retroactive. An order granting on that ground must be made at the outset of the excludable time." ***United States v. Kifwa***, 2020 US Dist. LEXIS 18141, 2020 WL 5913987 (1st Cir, 2020) – "the second, third, fourth, seventh, and tenth circuit all state clearly that the "ends of justice" exclusion can operate only prospectively. See ***Tunnessen***, 763 F.2d 74, 77 (2nd Cir. 1985)."

In Mr. Dancy's case, 26 continuances were issued. 6 of which were standing orders issued due to the Covid-19 pandemic. The defendant was arraigned on July 12, 2018 and no continuance was granted until 8/6/18. The continuance granted on 8/6/2018 excluded time from 8/1/2018 to 9/12/2018. This was signed 5 days after the beginning of the continuance (retroactive). Another continuance was granted on 9/10/2018, which excluded the time from 9/6/2018 to 11/12/2018. This too was signed 4 days after the beginning of the continuance, however as the two continuances overlapped, no additional days are accumulated.

**Time Accumulated from 7/12/2018 to 8/1/2018 = 20 days**

**Time Accumulated from 8/1/2018 to 8/6/2018 = 5 days**

**[Total Time accumulated through 11/12/2018 = 25 days]**

Another continuance was docketed on 11/20/2018, which excluded the time from 11/20/2018 through 1/16/2019.

**Total Accumulated from 11/12/2018 to 11/20/2018 = 8 days**

**[Total Time accumulated through 1/16/2019 = 33 days]**

Another continuance was docketed on 1/22/2019, which excluded the time from 1/18/2019 to 3/18/2019.

**Time Accumulated from 1/16/2019 to 1/22/2019 = 6 days**

**[Total Time accumulated through 3/18/2019 = 39 days]**

Another continuance was granted on 3/13/2019, which excluded the time from 3/13/2019 to 5/17/2019.

Another continuance was granted (retroactive) on 5/20/2019, which excluded the time from 5/16/2019 to 7/17/2019.

**Time Accumulated from 5/17/2019 to 5/20/2019 = 3 days**

**[Total Time accumulated through 7/17/2019 = 42 days]**

**Time Accumulated from 9/10/2019 to 9/17/2019 = 7 days**

**[Total Time accumulated through 9/17/2019 = 49 days]**

Mr. Dancy was subsequently indicted on 9/17/2019.

Defendant was arraigned on 09/26/2019. No continuance was entered until October 24, 2019, which excluded the time from 10/24/2019 through 01/26/2020

**Time Accumulated from 9/26/2019 to 10/24/2019 = 27 days**

**[Total Time accumulated through 1/26/2020 = 76 days]**

A continuance was signed on 6/2/21, which excluded the time from 6/2/21 to 8/5/21. The next continuance was signed on 8/9/21, which excluded the time from 8/9/21 to 10/1/21.

**Time Accumulated from 8/5/2021 to 8/9/2021 = 4 days**

**[Total Time accumulated through 10/1/2021 = 80 days]**

A continuance was signed on 10/4/21, which excluded the time from 10/4/21 to 12/1/21.

**Time Accumulated from 10/1/2021 to 10/4/2021 = 3 days**

**[Total Time accumulated through 10/04/1/2021 = 83 days]**

A continuance was signed on 02/7/22, 6 days retroactively, which excluded the time from 2/1/22 to 4/1/22.

The next continuance was signed on 5/4/22, which excluded the time from 4/4/22 to 5/30/22. This continuance was improperly retroactively granted and therefore the continuance does not start until 5/4/22.

**Time Accumulated from 2/1/2022 to 4/1/2022 = 6 days**

**Time Accumulated from 4/1/2022 to 5/4/2022 = 33 days**

**[Total Time accumulated through 5/4/2022 = 132 days]**

Defendant has demonstrated that Under U.S.C 3164 he is a detained person solely awaiting trial and that he has been held in continued detention since arrest. There are no delays attributable to the defense in the calculation of the 90 requirement. Therefore meeting the requirements held under 3164, conditions for release are now required to be reviewed and defendant released immediately.

***United States v. Lo Franco***, 620 F. Supp. 1324; 1985 U.S. Dist. LEXIS 14540 (ND NY, 1985) made it clear that "The fifth amendment protects against deprivation of liberty without due process of law. It is a violation of due process to imprison a defendant for a crime without a trial. Because the fifth amendment refers not only to sentences upon conviction, but to all deprivations of liberty, holding a defendant without bail for longer than he would serve if tried and convicted must also violate due process."***United States v. Bobbitt***, 2013 U.S. Dist. LEXIS 89196 (WD NY, 1023) reads:"The first factor affecting a possible due-process violation is the total length of defendant's pretrial detention, regardless of any breakdown of responsibility that occurs later in the analysis. *See* ***U.S. v. Gonzales Claudio***, 806 F.2d 334, 340 (2d Cir. 1986) (beginning due-process analysis by "[f]ocusing first on the duration of confinement" and **acknowledging "the total time the defendants have been in pretrial detention"**). Courts that measure total pretrial detention count actual detention plus likely prospective future detention; **they ignore possible future detention that is only speculative**. *See id.* (assessing future scheduling that is "without speculation"); *see also **Millan***, 4 F.3d at 1044 ("In weighing potential future detention, however, **we take into account non-speculative aspects of future confinement**.")"

As per 3164, the defendant must be released immediately on pre-trial release.

## II.   3142 Analysis

***3142*** Once a defendant has been ordered detained, he may move for the revocation or amendment of that order. When reconsidering its initial order on detention, a court must consider the facts of the individual case. That consideration is guided by the factors set forth in the Bail Reform Act for the initial determination of pretrial detention, as well as certain other factors commonly referred to as the "Accetturo" factors.

   (1) The gravity of the charges

(2) The degree to which the defendant poses a risk of flight or a danger to the community
(3) The strength of the Governments case on the merits
(4) The length of the pretrial detention that has already occurred
(5) The complexity of the case
(6) Whether either side has "added needlessly" to the complexity of the case through its litigation strategy.

## A. Gravity of charges

- The charges logged against defendant are all possessory in nature. They include the possession of weapons and narcotics. The defendant is charged with 841(b)(1)(B) Possession with the intent to distribute 100 grams or more of heroin, which carries a mandatory minimum sentence of 5 years. As Mr. Dancy has zero Criminal History points, his sentence exposure on a plea would be level 24 - 2 =22, Cat I, 41-51 months. Since he has already been incarcerated for 52 months, plus 8 months of Good Time, he has already served 60 months of federal incarceration. This exceeds his calculation related to the drugs.

- Next, defendant is charged with (2), 924(c)(b)(i)'s. Possession of short barreled weapons in furtherance of a drug trafficking offense. Accounting for counts 2, and 3 of the Superseding Indictment. However as will be discussed in detail in section C of this motion one of the counts will have to be dismissed as being in violation of the Double Jeopardy Clause of the Fifth Amendment. 924(c)(1)(B) carries a mandatory minimum sentence of 10 year that is served consecutively to other counts held in the indictment. Multi circuit case law review reveals that an overwhelming percentage of multi-count indictments which includes 924(c) count, plea bargain in favor of dismissal of the 924(c) count. See Peeples, 2022 U.S. Dist Lexis 189249 (D. NJ 2022) "A third count, use of firearm in furtherance of a drug transaction which carries a mandatory consecutive sentence was dismissed as part of the plea bargain"., United States v Johnson 260 F.3d 919 (8th Cir 2001), United States v Hall, 2018 U.S. Dist Lexis 161723.

- Thirdly defendant is charged with 5861(i) Possession of Firearms with serial numbers [base level offense 20, 4 points for 8-24 firearms] total offense level 24-2=22. As Mr. Dancy has zero Criminal

History points, his sentence exposure on a plea would be level 24 - 2 =22, Cat I, 41-51 months. Under 3D1.2, this charge would be concurrent to the 841(b)(1)(B) above and with Mr. Dancy already having 60 months of federal incarceration time, it would be deemed time served as to this offense.

- Lastly Mr. Dancy is charged under 922(g) Possession of firearms by a convicted felon. The 922(g) carries a sentence of 0-10 years. Mr. Dancy's sentence exposure puts him at a level 28 -2 = 26, Cat I, 63-78 months. [20 base offense, 4 pts for 8-24 guns, 4 pts for obliterated serial #] Under 3D1.2, this charge would be concurrent to the 841(b)(1)(B), and 5861(i) above and with Mr. Dancy already having 60 months of federal incarceration time, it would put him right at the bottom of his guidelines. 3 of the 5 counts in regards to factor (1) are deminimus in relation to seriousness of charge as defendant has served at least 70% of the maximum guideline range as to the 922(g) count. Defendant has served 100% of the guideline exposure as to the 5861, and the 841(b)(1)(B).The remaining 924(c)(1)(B)(i) counts will be addressed further in section C.

## B. The degree to which defendant poses a risk of flight or danger to the community

- The charges mentioned in section (A) are the result of an allegedly legally obtained search warrant executed on the residence of the defendant. Defendant was not present during the execution of the S/W and once later apprehended, he was not in possession of any weapons. Defendant has been held in detention for over 54 months. This in and of itself would diminish defendant ability to have access or ability acquire any weapons or narcotics upon release.
- Defendant does not pose a flight risk and has no history of bench warrants for failure to appear for any court proceedings.

Defendant does concede that the charges are considered inherently dangerous under scrutiny, but asks that his length of detention be heavily weighed against such regard and relies on case law to support such considerations. Accord.. Renzulli 1987 U.S. Dist Lexis 8750. Under the authority of 3142(c)2)D), the Third Circuit has allowed for the release of a defendant indicted on violent crime under "house arrest" conditions. United States v Traitz, 807 F.2d 322, 325-26 (3rd Cir 1986). In Vastola,

652 F. sup 1446 the court considered the (prospect) of continued detention, combined with some governmental delay in reaching trial outweigh the risks of the safety to the community and the burden on the government in minimizing that risk.

### C. The strength of the government's case on the merits

The ' case relies heavily on an overzealous detective who also acted as the affiant on multiple defective search warrant affidavits. The information is these affidavits came from an unreliable informant who in now a fugitive from justice now over 3 years. The validity of these executed search warrants remain to be in question pending motions ruling in support of a Franks Hearing. Defense also offers the contention that the affidavits and S/W offered as discovery have been fabricated and or altered after defendant's arrest. The affidavits contain information that could not have be known until after defendant was arrested. The sequence of page numeration on S/W 460-06-18 and dates and times entered on s/w 460-06-18 and s/w 463-06-18 A&B show a possibility that s/w 460-06-18 was backdated to cover an unlawful entry and search of defendants home.

Charging a defendant with two 924(c) charges with only one predicate offense is unequivocally restricted in the 3rd Circuit. In **United States v. Diaz**, 592 F.3d 467; 2010 U.S. App. LEXIS 954 (3rd Cir, 2010), the Defendant sought review of a judgment from the United States District Court for the Middle District of Pennsylvania which convicted him upon a jury verdict on one count of possession with intent to distribute heroin, 21 U.S.C.S. 841(a)(1), and two counts of possession of a firearm in furtherance of drug trafficking, 18 U.S.C.S. 924(c). Defendant also appealed the denial of his motion for a mistrial. Where defendant was convicted on one count under 21 U.S.C.S. 841(a)(1) and two counts under 18 U.S.C.S. 924(c) and argued that consecutive sentences under 924(c) violated the Double Jeopardy Clause, ambiguity in the text and legislative history of 924(c) required application of the rule of lenity and vacation of one 924(c) conviction. The case reads:

**"OVERVIEW:** Defendant argued that his convictions and consecutive 10-year sentences for the two firearm charges under 924(c) violated the Double Jeopardy Clause. Although defendant conceded that there was sufficient evidence to support the heroin distribution count and that he possessed a firearm on at least two occasions, he argued that two consecutive sentences for firearm possession in furtherance of drug trafficking could not be imposed when he was convicted on only one predicate drug trafficking offense. In considering whether the two

consecutive terms for the 924(c) convictions constituted greater punishment than the legislature intended, the court first determined that the predicate offense, not the firearm, was the object of 924(c)(1). The court further found that the ambiguity in the text of 924(c) and in its legislative history required the court to follow the rule of lenity and vacate one of defendant's 924(c) convictions."

"Under the Government's position, there would be no limitation on its ability to charge a defendant with a new 924(c) for each instance in which he used, carried, or possessed a gun as he sold drugs, which, under the statute's "second or subsequent" clause, could quickly add up to life imprisonment. The Second Circuit put it well when it said, "if congress intended to impose such a draconian penalty[,] . . . surely it would have said so in clear language." **Lindsay**, 985 F.2d at 674."

"For the reasons set forth, we will vacate one of Diaz's two 924(c) convictions and remand to the District Court for re-sentencing. *See Taylor*, 13 F.3d at 994 (prescribing the appropriate remedy in this context). As the Supreme Court stated in *Bass*, 404 U.S. at 348, "because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. . . . [t]hus, where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant."

Multi-Circuit case law unequivocally supports this same position in various scenarios.

**United States v. Lindsay**, 985 F.2D 666 (2nd Cir) –"Consequently, we conclude that congress considered the appropriate unit of prosecution to be the underlying drug trafficking offense not the separate firearms. Only where the defendant commits multiple drug trafficking crimes or violent crimes, and the government can link the firearms to those crimes, may the government prosecute for multiple violations of 924(c)(1). Where the government links multiple firearms for a single crime, only one 924(c) (1) violation occurs." **United States v. Johnson**, 899 F.3d 191; 2018 U.S. App. LEXIS 21909 (3rd Cir) – "In *Diaz*, we held that the Double Jeopardy Clause requires each 924(c) conviction to be tied to a separate predicate offense. 592 F.3d at 474-75." **United States v. Richard Antonio Hodge, Jr.**, 870 F.3d 184; 2017 U.S. App. LEXIS 17274; 68 V.I. 783 (3rd Cir) – "Unlike the defendant in *Diaz*, who had two 924(c) convictions on the basis

of a single predicate crime, Hodge's two 924(c) convictions were based on two separate predicate offenses"

This circuit and every other has held that for each separate § 924(c)(1)(A) charge it pursues the government must prove a separate crime of violence or drug trafficking crime. See also: **Privette**, 947 f.2d 1259, 1262-63 (5th Cir. 1991); **Henry**, 878 f.2d 937, 942,-45 (6th Cir 1989); **United States v. Hobbs**, 612 Fed. Appx. 94, 2015 US App Lexis 7758 (3rd Cir, 2015); **United States v. Coles**, 586 Fed. Appx. 98.(3rd Cir, 2014).

The law is clear that two 924(c) charges with one predicate drug offense violates the Double Jeopardy clause and one charge must be dismissed.

Aside from all the skullduggery engaged in by law enforcement initiating the current matter. The court should consider the following. In Alexander, 381 F. Supp. 2d 884 the court regarded Article: (Lowenthal Supra at 94-95) A federal judge accused the United States Attorney for the E.D.N.Y for having a policy of charging under 924(c) merely as a bargaining tactic. The judge also noted that probation officers and Legal Aid Society lawyers had advised the court that 924(c) is "commonly" used by the government as a bargaining chip.

### D. The length of detention that has already occurred.

As already mentioned in previous sections defendant has been held in pretrial detention for over 54 months. This is seriously violates Due Process rights afforded defendants defending themselves from charges by the government. Notwithstanding the multiple violations of the Speedy Trial Act that have already occurred. Including violation of the 30 day, 70 day (twice), and the 90 day STA clock. In **United States v Henderson, 2022 U.S. Dist Lexis** 193579 the court concluded that defendant's pretrial detention of over 40 months weighed in favor of release. **Theron, 782 F.2d 1510** "As congress recognized at some point a pretrial detainee denied bail must be tried or released.

### E. Complexity of the case and whether the government's legal strategy has delayed the case

The matter before the court is not a complex case. It involves only one defendant and the charges are all possessory in nature. Defendant has maintained the same position since arraignment on a single count complaint over 4.5 years ago. The government has added unnecessary

complexity by indicting, then superseding the indictment solely because defendant chose to exercise constitutional rights afforded all defendants in criminal cases. Charging defendant with multiplicitous counts, egregious piecemeal discovery practices, and the government's lackadaisical (back burner) conduct in disposing of the matter in a timely manner.

*Jarryl D_____*